1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                    **EASTERN DISTRICT OF CALIFORNIA**
7
8   **UNITED STATES OF AMERICA,**          **CASE NO. 1:13-CR-0362 AWI-1**
9                **Plaintiff**
10        **v.**                           **ORDER ON MOTION FOR**
                                           **COMPASSIONATE RELEASE**
11  **GAYLENE LYNNETTE BOLANOS,**
12              **Defendant**              (Doc. No. 558)
13
14
15        On August 13, 2020, Defendant Gaylene Bolanos filed a motion for compassionate release

16  under 18 U.S.C. § 3582(c)(1)(A).  See Doc. No. 31.  Defendant is currently housed at a satellite

17  camp at the FCI Dublin federal prison.  Based on her age, medical conditions, the overcrowded

18  conditions at FCI Dublin, and the Covid 19 pandemic, Defendant seeks compassionate release and

19  a new sentence of time served followed by a period of supervised release.  See id.

20        *Background*

21        On November 10, 2015, a jury found Defendant guilty of one count of 18 U.S.C. § 286

22  (conspiracy to defraud) and twelve counts of 18 U.S.C. § 287 (making and presenting a false claim

23  to a department of the United States).  See Doc. No. 343.  In March 2016, Defendant was

24  sentenced to a total term of 120 months in prison and 24 months supervised release.  See Doc.

25  Nos. 396, 404.  Defendant appealed, but her conviction was affirmed by the Ninth Circuit on

26  March 15, 2018.  See Doc. Nos. 400, 548, 551.  Defendant filed a 28 U.S.C. § 2255 petition for

27  habeas corpus in March 2019, and the petition was denied the same month.  See Doc. Nos. 555,

28  556.

1    Sometime before June 25, 2020, Defendant filed a request for compassionate release under

2  18 U.S.C. § 3582(c)(1)(A) with the warden of FCI Dublin.  See Doc. No. 558 & Ex. 1.  The

3  warden denied the request on June 25, 2020.

4    On August 13, 2020, through the federal defender's office, Defendant filed this motion for

5  compassionate release under § 3582(c)(1)(A).  As of the date of filing her motion, Defendant had

6  served approximately 57% of her sentence, or 67% if good time credits are considered.

7    *Defendant's Argument*

8    Defendant argues that she has served over half of her 120 month sentence and has been a

9  model prisoner.  She has obtained her GED and is a camp yard orderly, where she receives

10  outstanding work evaluations.  Defendant argues that she is particularly susceptible to Covid 19

11  because she is 63 years old, has anemia, a Vitamin D deficiency, and low Vitamin B12.  These

12  conditions cause her to be weak and have resulted in falls that required medical treatment.  The

13  anemia is concerning because the condition results in difficulty producing red blood cells, which

14  carry oxygen throughout the body.  The Vitamin D deficiency is concerning because Vitamin D is

15  associated with increased susceptibility to infection.  Defendant argues that she is currently housed

16  at a satellite camp at FCI Dublin.  FCI Dublin is overcrowded in that it was designed for 896

17  prisoners, yet currently houses 950 prisoners.  Only 119 prisoners have been tested for Covid 19.

18  Although there are no current active cases that are reported, Covid 19 has been in the prison in the

19  past and can spread extremely quickly.  Further, Alameda County (where FCI Dublin is located)

20  has 13,631 confirmed cases and is averaging 255 new cases per day and 2.9 new deaths per day.[1]

21  Given the high number of Covid 19 cases in Alameda County, it is likely that Covid 19 is

22  spreading in FCI Dublin.  Finally, Defendant explains that she has a solid release plan.  She will

23  live with her mother and aunt in Fresno, will be able to seek work and work online if necessary,

24  will be covered by Medi-Cal, and will have social and family support.

---

[1] Defendant cites the Los Angeles Times for these figures.  A review of the Los Angeles Times website indicates that there are 14,229 confirmed cases of Covid 19 in Alameda County and 216 deaths.  See www.latimes.com/ projects/california-coronavirus-cases-tracking-outbreak/alameda-county/.  The City of Dublin has 172 confirmed cases.  See id.  What is unclear, however, is if the "confirmed cases" is a total historical number (meaning past and active confirmed cases) or a number that represents only confirmed active cases.  That is, it is unclear what number of confirmed cases has resolved.

*Legal Standard*

Criminal defendants are empowered to request compassionate release for "extraordinary and compelling reasons." United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020). Specifically, in relevant part, 18 U.S.C. § 3582 provides:

> The court may not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it finds that—
>>>> (i) extraordinary and compelling reasons warrant such a reduction;

18 U.S.C. § 3582(c)(1)(A)(i). Before a defendant makes a request for compassionate release due to "extraordinary and compelling circumstances," the defendant must at least ask the [BOP] to do so on their behalf and give BOP thirty days to respond." Raia, 954 F.3d at 595; see also Alam, 960 F.3d at 833-34.

*Discussion*

After review, the Court will deny the motion for two reasons.

First, the Third and Sixth Circuits have found that the administrative exhaustion requirement of § 3582(c)(1)(A) is mandatory even in the context of Covid 19. Alam, 960 F.3d at 835-36; Raia, 954 F.3d at 597 (noting, in the context of an individual who did not wait 30 days from making a request for compassionate release before moving for release in the federal court system, "Although the District Court's indicative ruling did not mention the exhaustion requirement, it presents a glaring roadblock foreclosing compassionate release at this point."). The Ninth Circuit has held that "while judicially created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements deprive the court of jurisdiction and thus, preclude any exercise of discretion by the court." Gallo Cattle Co.

1   v. U.S. Dept. of Agric., 159 F.3d 1194, 1197 (9th Cir. 1998); see Shaw v. Bank of Am. Corp., 946

2   F.3d 533, 541 (9th Cir. 2019).  Consistent with *Gallo Cattle* and *Shaw*, numerous district courts,

3   including opinions from the Eastern District of California, have held that § 3582(c)(1)(A)'s

4   exhaustion requirement may not be waived.  E.g. United States v. Howard, 2020 U.S. Dist. LEXIS

5   113628, *5 (E.D. Cal. June 29, 2020) (Ishii, J.); United States v. Logan, 2020 U.S. Dist. LEXIS

6   88672, *3-*4 (W.D. N.C. May 20, 2020) (and numerous cases cited therein); United States v.

7   Cruceru, 2020 U.S. Dist. LEXIS 84502, *3 (E.D. Cal. May 12, 2020) (Nunley, J.); United States

8   v. Valladares, 2020 U.S. Dist. LEXIS 75182, *4 (S.D. Cal. Apr. 29, 2020) (and cases cited

9   therein); United States v. Meron, 2020 U.S. Dist. LEXIS 66533, *5 (E.D. Cal. Apr. 15, 2020)

10  (Mueller, C.J.).  The failure to exhaust administrative remedies as mandated by § 3582(c)(1)(A) is

11  a jurisdictional failure.  See Gallo Cattle, 159 F.3d at 1197; United States v. Greenlove, 2020 U.S.

12  Dist. LEXIS 114624, *15-*16 (M.D. Penn. June 30, 2020); Howard, 2020 U.S. Dist. LEXIS

13  113628 at *5; United States v. Smith, 2020 U.S. Dist. LEXIS 113423, *16 (E.D. Ark. May 14,

14  2020); Meron, 2020 U.S. Dist. LEXIS 66533 at *5.

15      Here, Defendant states that she filed a request for compassionate release with the warden

16  of FCI Dublin sometime before June 25, 2020, and that the warden denied the request on June 25,

17  2020.  See Doc. No. 558 at Ex. 1.  Defendant alleges that because more than 30 days have lapsed

18  since she made her request, she has met the exhaustion requirement.  See Doc. No. 558 at 10:13-

19  14.  There are no allegations that identify when the warden actually received the request, whether

20  the warden denied the request within 30 days of receiving the request, or that Defendant pursued

21  any further administrative remedy within the Bureau of Prisons.

22      It is clear that Defendant is relying on the "30 day lapse" language of § 3582(c)(1)(A).

23  What is unclear is where on the timeline the warden's denial falls.  This is significant because

24  there is a split among the district courts regarding the proper interpretation  of the "30 days lapse"

25  language.  Some courts hold that there is sufficient exhaustion as long as 30 days lapse from the

26  date the warden receives a request for compassionate release, period.  E.g. United States v.

27  Ezukanma, 2020 U.S. Dist. LEXIS 141363, *10-*15 (N.D. Tex. Aug. 6, 2020); United States v.

28  Field, 2020 U.S. Dis. LEXIS 78112, *2-*3 (S.D. N.Y. May 4, 2020); United States v. Kesoyan,

1   2020 WL 2039028, *3 (E.D. Cal. Apr. 28, 2020) (Mendez, J.).  However, other Courts find that

2   the "30 days lapse" language creates in essence a limited futility exception.  E.g. United States v.

3   Grasha, 2020 U.S. Dist. LEXIS 142401, *13-*16 (W.D. Pa. Aug. 10, 2020); United States v.

4   Greenlove, 2020 U.S. Dist. LEXIS 114624, *10-*21 (M.D. Penn. June 30, 2020); United States v.

5   Opoku, 2020 U.S. Dist. LEXIS 107781, *5-*6 (S.D. Miss. June 19, 2020).  Under this view, if

6   there is no response within 30 days of submission of a request for compassionate release, a

7   defendant at that point may proceed to Court without further administrative action, but; if there is

8   a timely response, the "30 day lapse" language has no application and the defendant must follow

9   the otherwise applicable administrative procedures and appeal the denial.  See id.  The rationale

10  for this latter view has been explained by one district court as follows:

11          Although definitions of "lapse" include "a passage of time," other definitions
            include "a slight error typically due to forgetfulness or inattention," and "the
12          termination of a right or privilege through neglect to exercise it within some limit
            of time."  Lapse, Merriam-Webster.com Dictionary, Merriam-Webster (accessed
13          May 4, 2020), available at https://www.merriam-webster.com/dictionary/lapse.
            Applying the first definition would substantially undermine one of the goals of an
14          exhaustion requirement—protecting agency authority, expertise, and the
            opportunity to correct mistakes—"as it [would] allow[] a defendant to come to
15          court before the agency has rendered a final decision" and foreclose higher-level
            BOP review of a request.  The first reading would also—in many cases—render the
16          statute's provision regarding full exhaustion of administrative remedies
            meaningless, as defendants like Ng would forego appealing a warden's denial of
17          their compassionate release request if the 30-day period was nearing an end.
            Indeed, given the BOP's regulations regarding its deadlines for considering
18          compassionate release requests, it is unlikely in the normal case that a defendant
            could exhaust his administrative remedies within 30 days. If Congress desired to so
19          fundamentally change the compassionate release process by circumventing the
            BOP's full administrative review, Congress could have used clearer language, as it
20          did elsewhere in the First Step Act. For example, in the very next subsection of the
            statute, Congress implemented a fourteen day deadline for the BOP to process a
21          terminally ill defendant's request for compassionate release. See 18 U.S.C. §
            3582(d)(2)(A)(iv) ("The Bureau of Prisons shall . . . in the case of a defendant
22          diagnosed with a terminal illness . . . not later than 14 days of receipt of a request
            for a sentence reduction . . . , process the request.") Although I recognize that the
23          First Step Act introduced several progressive reforms to the federal prison system,
            including "improving application of compassionate release," 164 Cong. Rec.
24          H10346-04, H10362 (daily ed. Dec. 20, 2018), and "expedit[ing] compassionate
            release applications," 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018), I cannot
25          conclude that the Act went so far as to render meaningless the BOP's consideration
            of such applications in the first instance without specific language evidencing such
26          a Congressional intent.

27  United States v. Seng, 2020 U.S. Dist. LEXIS 82044, *17-*19 (S.D. N.Y. May 8, 2020).

28          This Court agrees with the latter reading of § 3582(c)(1)(A)'s "30 days lapse" language.  If

1  a defendant's request is not acted upon within 30 days, the defendant may file a motion for

2  compassionate release in federal court, but if the request is denied within 30 days, the defendant

3  must continue to appeal and exhaust available administrative remedies.  See Grasha, 2020 U.S.

4  Dist. LEXIS 142401 at *13-*16; Greenlove, 2020 U.S. Dist. LEXIS 114624 at *10-*21; Opoku,

5  2020 U.S. Dist. LEXIS 107781 at *5-*6; United States v. Davis, 2020 U.S. Dist. LEXIS 87019,

6  *4-*5 (E.D. N.Y. May 18, 2020); Seng, 2020 U.S. Dist. LEXIS 82044 at *17-*22; United States

7  v. Weidenhamer, 2019 U.S. Dist. LEXIS 195620, *10-*11 (D. Ariz. Nov. 8, 2019).

8        The Court finds that this is a reasonable reading of § 3582(c)(1)(A) and does not result in

9  rendering that section's "exhaustion" language a nullity.  If the Court were to accept the view that

10  merely waiting 30 days until after a request for compassionate release has been submitted,

11  irrespective of timely action by the BOP/Warden, "an inmate would never have a reason to

12  exhaust his administrative remedies, since he could simply make a motion in the district court

13  after waiting for 30 days following his submission of his request to the warden."  Davis, 2020 U.S.

14  Dist. LEXIS 87019 at *4-*5.  This is so because the Court is unaware of an instance in which a

15  prisoner who seeks compassionate release has fully exhausted the administrative process in 30

16  days or less.  Cf. Seng, 2020 U.S. Dist. LEXIS 142401 at *18-*19 ("[I]t is unlikely in the normal

17  case that a defendant could exhaust his administrative remedies in 30 days.").  Further, this

18  interpretation is consistent with the recognized congressional intent to speed up the compassionate

19  release process.  See id.  If the warden does not act in 30 days, the administrative process is

20  sufficiently fulfilled, and the prisoner may then go to court.  If the warden denies the request, the

21  remainder of the administrative process must be exhausted, but at least the process may continue

22  within 30 days of the warden receiving the request.  Under either scenario, the administrative

23  process is advanced within 30 days.

24        Here, it is Defendant's burden to demonstrate exhaustion under § 3582(c)(1)(A).  See

25  United States v. Addison, 2020 U.S. Dist. LEXIS 143518, *4 (E.D. La. Aug. 11, 2020); United

26  States v. Van Sickle, 2020 U.S. Dist. LEXIS 80854, *9 (W.D. Wash. May 7, 2020) (and cases

27  cited therein).  Defendant has not explained when the warden of FCI Dublin received her request

28  for compassionate release or even when she sent her request to the warden.  Without that

1    information, the Court cannot determine whether exhaustion has occurred and thus, whether

2    jurisdiction exists.  Therefore, Defendant has not met her burden, the Court must deny her motion.

3    See Gallo Cattle, 159 F.3d at 1197; Greenlove, 2020 U.S. Dist. LEXIS 114624 at *15-*16;

4    Howard, 2020 U.S. Dist. LEXIS 113268 at *5; Smith, 2020 U.S. Dist. LEXIS 113423 at *16;

5    Meron, 2020 U.S. Dist. LEXIS 66533 at *5.

6          Second, and in the alternative, even if the Court were to conclude that Defendant met her

7    burden of demonstrating exhaustion and jurisdiction, the Court would not find that she has

8    demonstrated extraordinary and compelling reasons for compassionate release.  The personal

9    characteristics identified do not clearly show that Defendant is considered at increased risk of

10   suffering severe illness from Covid 19.  Defendant states that she has anemia, low vitamin D, and

11   low vitamin B12.  Although Defendant persuasively explains why these conditions could make

12   her susceptible to contracting Covid 19 or make it more difficult for her immune system to deal

13   with the virus, none of these conditions are identified by the CDC as conditions that either place a

14   person at increased risk for severe illness or might increase the risk of severe illness from Covid

15   19.  See www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-

16   conditions.html.[2]  Similarly, while Defendant's age of 63 puts her at an increased risk compared to

17   those in their 40's or 50's, the CDC website suggests that those 65 years and older face the

18   greatest risk (particularly those over 85) because they account for 80% of reported Covid 19

19   deaths.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-

20   adults.html.

21         Additionally, Defendant has not adequately explained the "living conditions" that exist at

22   FCI Dublin.  Defendant explains that the Dublin prison is overcrowded.  However, she also states

23   that she is being housed in a satellite camp, which the Court takes to mean that she is not in the

24   main facilities of FCI Dublin.  There is no description of how often Defendant comes in contact

25   with other inmates, whether she has personal protective equipment or sufficient access to soap or

26   sanitizers, or whether and how often Defendant is able to practice social distancing.  There is also

27
28   [2] The Court recognizes that the medical community's understanding of Covid 19 is evolving.  The fact that a condition
     is not listed on the CDC website is not necessarily dispositive in terms of assessing the risk an individual faces from
     Covid 19.  However, the absence of a particular condition on the CDC's list is probative.

1  no description of the steps that FCI Dublin (including the satellite camp) has taken to reduce the

2  spread and threat of Covid 19 among the inmates.

3      Finally, there are no active cases of Covid 19 at FCI Dublin, either among the staff or the

4  inmates.  <u>See</u> https://www.bop.gov/coronavirus/.  It is true that one inmate and six staff members

5  at FCI Dublin have recovered from Covid 19.  The Court will also accept that FCI Dublin has not

6  tested all of the inmates.  It appears that FCI Dublin is performing tests, but presumably only when

7  a person's symptoms warrant the test.  Nevertheless, whatever FCI Dublin's past experience and

8  infection rate may be, and whatever the relative merits of the prison's testing policies, the fact

9  remains that there are no active cases of Covid 19 at FCI Dublin that have been identified.

10     From the above, Defendant has demonstrated that she might be (at best) at an increased

11  risk of serious illness in a prison that has no active cases of Covid 19.  The words of the Third

12  Circuit best describe this situation:  "We do not mean to minimize the risks that COVID-19 poses

13  in the federal prison system . . . .  But the mere existence of COVID-19 and the possibility that it

14  may spread to a particular prison alone cannot independently justify compassionate release . . . ."

15  <u>Raia</u>, 954 F.3d at 597.

16     In sum, because Defendant has not shown that she has exhausted her administrative

17  remedies or that she faces extraordinary compelling reasons that justify compassionate release, the

18  Court will deny Defendant's § 3582(c)(1)(A) motion.

19

20                              **<u>ORDER</u>**

21     Accordingly, IT IS HEREBY ORDERED that Defendant's motion for compassionate

22  release (Doc. No. 558) is DENIED without prejudice.

23

24  IT IS SO ORDERED.

25  Dated:  __August 17, 2020__          _____

26                          SENIOR  DISTRICT  JUDGE

27

28

                              8